IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | Case No. 07 B 07395 |
| RICHARD KORTAN ) | |
| PAMELA KORTAN, ) | Hon. Eugene Wedoff |
| ) | |
| Debtors and Debtors in Possession. ) | |

**FIRST AMENDED DISCLOSURE STATEMENT**

This First Amended Disclosure Statement (the "Disclosure Statement") is filed by the Debtors RICHARD AND PAMELA KORTAN ("Debtors"), dated October 12, 2007, in connection with the Debtors' First Amended Plan of Reorganization ("Plan") also filed by Debtors on October 12, 2007.  This Disclosure Statement is intended to provide creditors with information of a kind and in sufficient detail of the Debtors' history and of the condition of the Debtors' books and records to allow creditors to make an informed judgment when voting on the Plan.  The Plan is not a liquidating plan and all creditors will receive full or partial payment of their Allowed Claims.  Creditors are advised that, after review, the Court may approve the Disclosure Statement, but such approval does not constitute endorsement.

**I.  SUMMARY:**

On April 24, 2007 (the "Petition Date"), RICHARD AND PAMELA KORTAN (the "Debtors") filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Code").  The Debtors remain in possession of their assets and continue to generate income pursuant to §§ 1107 and 1108 of the Code.  Mr. Kortan, a chiropractor, operates a sole proprietorship doing business as Rollins Chiropractic ("Rollins").  Mrs. Kortan is a homemaker and does not currently earn any income.  Pursuant to §§ 308 and 101(51c) of the Code, this is a small business Chapter 11 reorganization case because Richard Kortan is engaged in business activities and the Debtors have

1

aggregate noncontingent liquidated secured and unsecured debts as of the Petition Date in an amount of not more than $2,000.000.00.

The Debtors are proposing a Five Year Plan, in which the Debtors are the disbursing agent. In the Plan, claims are divided into four categories: Unclassified, Class I, Class II, and Class III. Unclassified claims and Class I claims are unimpaired. Class II and Class III claims are impaired. Unclassified claims are the administrative claims of the Debtors' attorneys and accountant, estimated to total $25,000.00 at confirmation, and the claim of the U.S. Trustee for statutory fees. The claim of the U.S. Trustee will be paid current at confirmation. The claims of the Debtors' attorneys and accountant will be paid in full by the end of the second year of the Plan.

Class I claims are the allowed claims entitled to priority by §§ 507(a)(2), (3), (4), (6), and (7) of the Bankruptcy Code. The Debtors believe that no Class I claimants exist in this case. If any such claims are discovered and allowed, they will be paid in full during the Plan, prior to any distribution to general unsecured creditors, which are Class III claimants.

Class II claims are the Allowed Claims of Countrywide Home Loans, Inc. ("Countrywide"), which are secured against the Debtors' residence by first and second mortgages. The Debtors will satisfy Class II claims in full by either selling or surrendering their home to Countrywide in June, 2008. The home has a current market value of $740,000.00. Therefore, surrender or liquidation of the home should enable the Debtors to satisfy Countrywide's claims, which total $685,915.72, in full.

Class III claims are all Allowed General Unsecured Claims without priority. There are 33 Class III claims for a total of $576,962.91. Under the Debtors' Plan, Class III claimants will receive ten percent (10%) of their allowed claims, or a total of $57,696.29. The Debtors will pay $9,581.00 in the 24th month of the Plan, $15,284.00 in the 36th

2

month of the Plan, $16,244.00 in the 48th month of the Plan and $16,587.29 in the 60th month of the Plan in payments to Class III claimants, pro rata.  Under the Debtors' Plan, Class III claimants will receive more than the amount they would receive if the Debtors' assets were liquidated, which would total approximately six and one-half percent of the estimated allowed Class III Claims.

The only claims Debtors intend to dispute are the Class III claims of GMAC and Nissan – Infiniti LT, which are the lessors of the Debtors' automobiles.  Because the Debtors are assuming the leases in the Plan, GMAC and Nissan – Infiniti LT will not receive any distribution under the Plan, but will instead continue to receive current lease payments.  Any other claims objections will be made only to avoid paying duplicate claims that have been assigned from the creditor listed in the Debtors' Schedule F to another party.

Summary of Financial Difficulties:

The Debtors started Rollins in September, 1993.  Pamela stopped working in 1998 when the Debtors' first child was born. Rollins' revenue and net income increased each year, from 1993 to 2000.  Rollins reported its best financial years in 1999 and 2000.

In 2001, Richard began to experience health problems in the form of breathing difficulties.  After seeking the advice of many professionals, in 2002, Richard had complete sinus surgery.  Following the surgery, Richard experienced an allergic reaction to a post-operative medication and nearly died.  After the first procedure failed, Richard had a second procedure in September of 2003.  From 2001 to 2003, due to his declining health, Richard was not able to maintain his previous work schedule and Rollins' business suffered to the tune of a 25% reduction in net profits.  Also, during this period, the Debtors were forced to rely on credit to pay both business and personal

3

expenses. Fortunately, the second sinus operation was successful, and Richard's health has recently improved.

The Debtors sought to avoid bankruptcy by borrowing against their home, cashing retirement accounts, and attempting to consolidate their debts through a debt consolidation service. Unfortunately, the Debtors' efforts were unsuccessful. Richard has gradually built Rollins' business back to pre-2001 levels, but the Debtors could not overcome their amount of debt and were forced to seek relief under Chapter 11 of the Bankruptcy Code.

Debtor's Post-Petition Activities:

Utilities: Debtors are current in their payment of electric, gas, water, and phone.

Insurance: Debtors are current in their payment of insurance.

Accounting Services: On May 15, 2007, the Court allowed Debtors to engage the services of the accounting firm of WINDFALL ACCOUNTING SERVICES ("Windfall"). The firm established orderly bookkeeping procedures. Windfall has prepared and filed operating reports for the months of April/May, June, July, and August. On September 25, 2007, amended reports for April/May, June, and July were filed. The amended reports correct an accounting error with respect to gross receipts and reflect actual monthly cash receipts, as opposed to accrual of monthly revenue. The Debtors expect to file their delinquent tax returns for the years 2005 and 2006 by November 1, 2007. The Debtors have developed the five-year plan for Rollins Chiropractic and other accounting documents attached to this Disclosure Statement. Debtors' Attorneys have drafted the attached liquidation analysis.

Lawgistix Settlement:  The Debtors settled a claim against Lawgistix, Inc. for refund of monies paid pre-petition for debt consolidation services. On August 28, 2007, the Court approved the settlement in the amount of $8,235.26. The settlement amount

has been received by the Debtors, and a portion of it has been used to pay professional fees approved by the Court.

Debtors' Assets:

Real Estate:  The Debtors own their home at 376 St. Andrews Lane, Gurnee, Illinois in joint tenancy.  On the Petition Date, the Debtors estimated the value of the property to be $740,000.00.  The property is encumbered with first and second mortgage liens belonging to Countrywide with a combined balance of approximately $685,321.00

Vehicles:  The Debtors are currently leasing a 2005 GMC Hummer and a 2005 Infiniti Qx56 GT.  The Debtors do not hold legal title to any vehicles.

Accounts Receivable:  On the Petition Date, Rollins had a total of $138,088.40 in accounts receivable (the "Outstanding Accounts Receivable).  Of the total Outstanding Accounts Receivable, Rollins expected to collect approximately forty percent (40%), or $55,235.36.  This expectation is based upon the fact that Rollins' business relies on third party payors such as insurance companies and Medicare for nearly all of its revenue.  The insurance companies only provide partial reimbursement for Rollins' services, and Rollins' fees are typically discounted by approximately sixty percent. Rollins writes off the difference between the actual charges and the amounts reimbursed from third party payors.   For example, in 2004, Rollins billed at total of $640,936.00, but only collected $291,656.94, or 45.5% of the gross billing amount.  In 2005, Rollins billed a total of $676,676.00, but only collected $304,208.31,or 44.9% of the gross billing amount.  In 2006, Rollins billed a total of $905,601.00, but only collected $373,543.67, or 41.2% of the gross billing amount.  From January 1 to August 25, 2007, Rollins billed a total of $621,235.96, but only collected $247,508.37, or 39.8% of the gross billing amount.  Rollins' Practice Analysis Reports for the years 2004-2006, and 2007 (through August 25), are attached to this Disclosure Statement as Exhibit A.

Cash: The Debtors had a total of $5,000.00 in cash at the time of filing.

Miscellaneous Personal Property:   On the Petition Date, the Debtors owned miscellaneous personal property totaling $8,050.00 including household goods and furnishings, pictures, artwork, books, pictures, compact discs, records, sports equipment, jewelry, clothing, and musical equipment.

Office Equipment, Furnishings, Supplies:   At the time of filing, the Debtors owned office equipment, furnishings, and supplies with a combined value of $1,610.00, including various chiropractic equipment and two old computers.

Life Insurance and Investments:   The Debtors hold two life insurance policies with a combined cash value of $5,900.00, and a brokerage account valued at $1,592.64 on the Petition Date.

Contingent and Unliquidated Claims:   The Debtors settled a pre-petition claim against Logistix, Inc. for the amount of $8,235.26.

Proofs of Claims Filed Against the Debtors:

**SECURED CREDITORS:**

Countrywide:   On June 29, 2007, Countrywide Home Loans, Inc. filed a proof of claim as a secured creditor in the sum of $310,327.72.  Debtors do not intend to object to the claim.

Charter One Bank, N.A. :   On May 7, 2007, Charter One Bank, N.A./Citizens Bank ("Charter One") filed a proof of claim as a secured creditor in the sum of $101,630.29.  However, the judgment lien of Charter One was avoided by the Court on September 5, 2007.  Therefore, Charter One's claim will be paid as unsecured in the Plan.

JP Morgan Chase Bank:   On September 13, 2007, JP Morgan Chase Bank, NA ("JP Morgan"), filed a proof of claim as a partially secured creditor in the amount of $35,107.20, listing $3,950.54 as secured and the remainder as unsecured.  JP Morgan's proof of claim reflects the Court's order of September 5, 2007, which partially avoided and reduced JP Morgan's judgment lien to $3,950.54.  The Debtors do not

intend to object to JP Morgan's claim.  If the Debtors sell their home in June, 2008, JP Morgan's lien shall attach to the proceeds of the sale, with the remainder of the claim paid as unsecured.  If the Debtors instead elect to surrender their home to Countrywide in June, 2008, the full amount of JP Morgan's claim shall be paid as unsecured.

**GENERAL UNSECURED CREDITORS**:  The following creditors filed claims as general unsecured creditors without priority:

[THIS SPACE INTENTIONALLY LEFT BLANK]

| Creditor | Date | Claim No. | Claim Amount | Debtor's Intent |
|---|---|---|---|---|
| GMAC | 4/27/07 | #1 | 55,077.88 | Obj |
| Nissan – Infiniti LT | 5/1/2007 | #2 | 25,595.50 | Obj |
| Discover | 5/7/2007 | #3 | 6,414.47 | No obj |
| Discover | 5/7/2007 | #4 | 6,291.40 | No obj |
| Com Ed | 5/7/2007 | #6 | 171.10 | No obj |
| CLC Consumer Services (Capital One) | 5/7/2007 | #7 | 16,440.46 | No obj |
| Bank of America | 5/15/2007 | #8 | 16,555.95 | No obj |
| Bank of America | 5/15/2007 | #9 | 11,601.10 | No obj |
| CLC Consumer Services (Capital One) | 5/15/2007 | #10 | 19,708.77 | No obj |
| RBS NB | 5/18/2007 | #11 | 2,913.58 | No Obj |
| Wells Fargo | 5/25/2007 | #12 | 5,398.37 | No Obj |
| Chase Bank USA, N.A. | 5/31/2007 | #13 | 57,946.98 | No Obj |
| Chase Bank USA, N.A. | 5/31/2007 | #14 | 5,330.40 | No Obj |
| Chase Bank | 6/26/2007 | #15 | 9,376.66 | No Obj |
| US Bank Corp | 6/26/2007 | #16 | 23,312.44 | No Obj |
| Sallie Mae | 9/12/2007 | #18 | 49,632.18 | No Obj |
| North Start Capital Acquisition (assignee of Wells Fargo) | 9/12/2007 | #19 | 1,319.00 | No Obj |
| Federated Financial Corp. | 9/14/2007 | #21 | 12,781.47 | No Obj |
| **TOTAL CLAIMS** | | | **325,867.71** | |
| **TOTAL UNCONTESTED CLAIMS** | | | **245,194.33** | |

Use of Cash Collateral:  No entity has alleged that it has a lien on Debtors' cash collateral.

Claims of Creditors Which Filed No Proof of Claim:   The Bar Date for general unsecured claims was September 15, 2007.  The Debtors have not listed any claims as disputed, and do not intend to object to any claims on the sole basis that creditors have not filed proofs of claim.

Claims of Creditors Which Have Assigned Their Claims: North Start Capital Acquisition and CLC Consumer Services have filed claims as assignees of Wells Fargo and Capital One, respectively.  The Debtors will object to the Wells Fargo and Capital One claims because these creditors have assigned their claims to be collected by other entities.

Unsecured Claims of Auto Lessors:  GMAC and Nissan – Infiniti LT, the lessors of the debtors' automobiles, have filed unsecured claims of $55,077.48 and $25,595.50 respectively.  The Debtors intend to object to these claims, because the Debtors will assume the leases in the Plan, and there is no default with respect to either lease.  The Debtors would prefer to reject one or both auto leases, but have been unable to find financing to purchase or lease less expensive vehicles.

Priority Unsecured Claims:  No priority unsecured claims have been filed, and the Debtors do not expect any to be filed in this case.

Debtors' Plan:

The Debtors expect to emerge from chapter 11 with a fresh start, having proposed in good faith a feasible plan to satisfy their secured creditors, unsecured creditors, and other allowed claimants in accordance with the provisions of 11 U.S.C. § 1129(a).  The plan provides that, should Debtor fail to obtain the votes required to

confirm a consensual plan, it will nevertheless ask the Court to confirm the plan as being fair, reasonable, and in accordance with Code provisions.

Analysis of Claims:

Actual claimants fall into the following groups:

UNCLASSIFIED CLAIMS consist of Administrative Claims, including the claim of the Debtors' Attorneys in an amount as yet undetermined, but estimated at approximately $20,000.00 at confirmation, and Debtor's Accountants in an amount as yet undetermined, but estimated at approximately $5,000.00 at confirmation, and statutory fees owing to the U.S. Trustee in an amount as yet undetermined but expected to be current at the time of confirmation.

CLASS I CLAIMS shall be all Allowed Claims entitled to priority by §§ 507(a)(2), (3), (4), (6), and (7) of the Bankruptcy Code. To the best of Debtors' knowledge, no Class I claims exist, or will be filed.

CLASS II CLAIMS consist of all Allowed Secured Claims of Countrywide Home Loans, Inc ("Countrywide"). On June 29, 2007, Countrywide filed a proof of claim as a secured creditor in the sum of $310,327.72 (Claim No. 17). Claim No. 17 represents the second mortgage secured by the Debtors' homestead property at 376 St. Andrews Lane, Gurnee, Illinois. Countrywide has not filed a proof of claim for the first mortgage, which the debtors have scheduled at $375,588.00. The Debtors do not intend to object to Countrywide's secured claims for the first and second mortgages.

CLASS III CLAIMS consist of all Allowed General Unsecured Claims without Priority (excluding Unclassified Claims as defined above and Class I Secured Claims), as the same are allowed, or after objection, are approved and ordered to be paid by the Court. Class III Claims shall exclude all amended claims to the extent that creditors seek to alter the classification of their claim. Provided that claimants adhere to that rule,

Class III Claims shall include, without limitation: all Claims that may arise out of the rejection of executory contracts; all claims of Secured Creditors to the extent that the Court finds their Claims to be unsecured in whole or in part and who file with leave of court timely amended proofs of claim setting forth a liquidated amount; all claims of taxing bodies which are listed as general unsecured claims or which are filed as priority claims but found not to be so, to the extent that the taxing bodies file timely amended proof of claims with leave of court; and all Claims of Secured Creditors who timely elect to participate in whole or in part as Class III Unsecured Creditors.

<u>Plan is Fair</u>

Debtors assert that their Plan is feasible and fair, and, if creditors do not consent to it, the Debtors will nevertheless ask the Court to confirm it under § 1129(b).

<u>Exhibits</u>

A liquidation summary is attached hereto as <u>Exhibit B</u>. In summary, it shows that the total liquidation value of Debtor's assets is as follows:

| | |
|---|---|
| Real Property | 0 |
| Personal Property | 62,533.34 |
| TOTAL LIQUIDATION VALUE OF DEBTOR'S ASSETS | $62,533.34 |

Further, there are the following Administrative Priority Claims that would need to be satisfied before any funds would be paid to unsecured creditors:

| <u>Claimant</u> | <u>Amount</u> |
|---|---|
| Debtors' Bankruptcy Counsel | $ 20,000.00 (estimated) |
| Debtor's Bankruptcy Accountant | $  5,000.00 (estimated) |
| TOTAL ADMINISTRATIVE PRIORITY CLAIMS | $25,000.00 |

Before unsecured creditors would be paid any money, all claimants with a higher priority under 11 U.S.C. § 507(a) must be paid in full from the proceeds of liquidation by a

chapter 7 trustee. Under the above liquidation analysis, after claimants with higher priorities are paid, there would be $37,533.34 available to pay general unsecured creditors without priority.

The total of all allowed unsecured claims, filed and not filed, is expected to be $576,962.91. Under Debtors' plan, general unsecured creditors without priority will receive approximately ten percent (10%) of their allowed claims. If this case was converted to a case under Chapter 7 and a Chapter 7 Trustee liquidated Debtors' assets, unsecured creditors would receive $37,533.34 or approximately six and one-half percent (6.5%) of their claims. Therefore, unsecured creditors will receive more under the Debtors' plan than if the case were converted to a case under chapter 7, and a chapter 7 trustee liquidated Debtor's assets.

The Debtors' Estimated Five Year Budget is attached hereto as <u>Exhibit C</u>. The Budget shows that, under the terms of the Plan, the Debtors will be able to pay their current monthly obligations, and that the Debtors will have funds remaining each year to apply to Plan payments.

Debtors' most recent operating report, for August, 2007, is attached hereto as <u>Exhibit D</u>.

## II. THE PLAN OF REORGANIZATION

THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN. CREDITORS ARE URGED AGAIN TO STUDY THE PLAN IN FULL, AND TO CONSULT WITH COUNSEL TO UNDERSTAND THE PLAN SINCE IT IS A COMPLEX AND LEGALLY BINDING DOCUMENT.

The Plan provides for the division of claims into: Unclassified, Class I, Class II, and Class III claims. Payments to be made under the Plan are to come from the Debtors' regular income, and the Debtors will be the disbursing agent for all Plan

payments. Class I claims are unimpaired. Class II claims are impaired. Class III claims are impaired.

Unclassified Claims include only administrative expenses under § 502(b). Since Debtor in Possession debts are paid on a current basis, and since the U.S. Trustee's fees will be paid in full upon confirmation, professional fees that accrue as of the Effective Date are expected to be the only administrative claims. Allowed administrative expenses under §502(b)(4) will be paid in full by the end of the second year of the Plan.

CLASS I CLAIMS are Allowed Claims entitled to priority by §§ 507(a)(1), (2), (3), (4), (5), (6), (7), and (8) of the Bankruptcy Code. The Debtors believe that no Class I claims exist in this case, and anticipate that no Class I claims will be filed. If any such claims are filed and allowed, they will be paid in full prior to any payments being made to Class III claimants, which are general unsecured creditors.

CLASS II CLAIMS are the secured claims of Countrywide for the first and second mortgages against the Debtors' homestead located at 376 St. Andrews Lane, Gurnee, Illinois (the "Real Property"), totaling $685,321.00. The Real Property has a fair market value of $740,000.00. In June, 2008, The Debtors will either surrender the Real Property to Countrywide or sell the Real Property, in order to satisfy Countrywide's claims in full.

CLASS III CLAIMS of general unsecured creditors without priority, to the extent they are allowed or after objection approved and ordered to be paid by the Court in specific liquidated amounts, will be paid ten percent (10%) of their allowed claims during the Plan. The Debtors will remit a total of $9,581.00 in the 24th month of the Plan, $15,284.00 in the 36th month of the Plan, $16,244.00 in the 48th month of the Plan and $16,587.29 in the 60th month of the Plan in payments to unsecured creditors, pro rata.

Debtors' unexpired lease with Equities Associates Corp. IV for its business

13

premises located at 702 E. Rollins Road, Round Lake Beach, Illinois was assumed on August 28, 2007 by order of Court. In their Plan, the Debtors are assuming the lease of a 2005 Hummer automobile with GMAC, and the lease of a 2006 Infiniti QX56 GT with Nissan-Infiniti LT.

### III. FINANCIAL CONDITION

The Debtors have filed operating reports for the periods of April 24 - May31, June 1 – June 30, July 1 – July 31, and August 1 – August 31, 2007, which show gross revenue of $43,742.00, $29,705.33, $28,443.93, and $39,114.11, respectively, for a monthly average of $33,478.02. The projection of the Debtors' gross revenue over five (5) years is set forth in Debtor's Exhibit B. It shows that the Debtors anticipate total gross revenue of $375,044.00 for Year 1, $367,523.00 for year 2, $373,208.00 for Year 3, $372,134.00 for Year 4, and $375,855.00 for Year 5.

The Debtors' operating reports show business expenses for the period from April 24-May 31 of $21,455. Total cash disbursements were $40,846.52. For the period of June 1-June 30, business expenses were $19,246.33. Total cash disbursements were $31,318.21. For the period of July 1 – July 31, business expenses were $23,690.09. Total cash disbursements were $35,815.43. For the period of August 1 – August 31, business expenses were $15,111.21. Total cash disbursements were $33,183.55. The Debtors' operating reports show average monthly business expenses of $19,005.86 and average monthly cash disbursements totaling $33,634.99. The Debtors project that their annual expenses will be $358,010.00 in Year 1, $349,976.00 in Year 2, $357,924.00 in Year 3, $355,890.00 in Year 4, and $358,488.00 in Year 5. The Debtors' projected expenses for the next five (5) years are set forth in Exhibit C.

As is set forth in full detail in Exhibit C hereto, Debtor will have funds available for plan payments in the following sums:

**Year 1**         $17,034.00

**Year 2**         $17,547.00

**Year 3**         $15,284.00

**Year 4**         $16,244.00

**Year 5**         $17,367.00

### IV.  THE PURPOSE OF THIS DISCLOSURE STATEMENT

Together with this Disclosure Statement, the Debtors have filed with the Court their proposed Plan of Reorganization.  The purpose of this Disclosure Statement is to provide each creditor with a description of the Plan to aid her/him in making an informed decision as to whether to accept or reject the Plan.  Each creditor in an impaired class is entitled to vote on acceptance of the Plan.  A copy of the Plan accompanies this Disclosure Statement.  THE DISCLOSURE STATEMENT PROVIDES A BRIEF SUMMARY OF THE PLAN AND OTHER INFORMATION WITH RESPECT THERETO AND IS NOT INTENDED TO TAKE THE PLACE OF THE PLAN.  EACH CREDITOR IS URGED TO STUDY THE PLAN IN FULL AND TO CONSULT WITH COUNSEL WITH RESPECT TO THE PLAN AND his EFFECT ON HIS RIGHTS.

The Court will set a date for a hearing on the confirmation of the Plan.  Creditors may vote on the Plan by filing out and mailing the accompanying Ballot for Accepting or Rejecting The Plan to:  Closing Department, 7th Floor Dirksen Building: 219 South Dearborn St., Chicago, IL 60604.  In order for the Plan to be accepted, claimants holding at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims in impaired classes who vote, must vote in favor of the Plan.  The Plan might be confirmed with the acceptance of one Class of Claimants as described hereafter in the final paragraph.

NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED THAN AS SET FORTH IN THIS STATEMENT.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER

THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO THE OFFICE OF THE UNITED STATES TRUSTEE WHICH, IN TURN, SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO CERTIFIED AUDIT.  THE DEBTORS DO NOT WARRANT OR REPRESENT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH CONSIDERABLE EFFORT HAS BEEN MADE TO BE ACCURATE.

The Debtors have proposed their Plan of Reorganization in good faith and in compliance with the applicable provisions of the Bankruptcy Code.  Regardless of the results of voting under any class of claims, the Debtors may ask the Court to confirm the Plan of Reorganization which can occur as provided by law if the Court finds that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting creditors described is such class.  This option can occur only if the Court makes the requisite findings after being presented with the evidence.

*17*

        Respectfully submitted,

        RICHARD AND PAMELA KORTAN


        By:    /s/ Peter L. Berk
               One of their attorneys


Forrest L. Ingram
Peter L. Berk
Patrick Lambe
FORREST L. INGRAM, P.C.
79 W. Monroe, Suite 900
Chicago, IL 60603-4907
(312) 759-2838
Atty. No. 3129032